UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MURICE ROBINSON,

             Petitioner,

-*against*-

THE CITY OF NEW YORK, POLICE OFFICERS BRAULIO APONTE, SHIELD# 00581, PSA 7, JOHN DOE 1, 2 & 3, SHIELD NUMBERS & COMMANDS UNKNOWN, & CORRECTION OFFICER TOM DOE 1, SHIELD NUMBER AND COMMAND UNKNOWN,

             Respondents.

12 Civ. _____( )

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

       Plaintiff MURICE ROBINSON, by and through his attorney, Steven H. Goldman, Esq., for his Complaint alleges as follows:

**PRELIMINARY STATEMENT**

       1.      On Sunday, April 10, 2011, Murice Robinson was relaxing outside the building where he sometimes resided with his mother and talking with a friend.  He, his friend, James White, and a third friend, were standing about fifteen feet from the building's entrance when an officer asked them to move.  Though they were not close enough to the entrance to block people from coming or going, they complied nonetheless, moving to some benches about twenty-five feet from the building entrance.  After a few minutes the same police officer came over and told Mr. Robinson, who was standing next to a bench talking to Mr. White and another friend, to sit down on the bench.  Mr.

Robinson told the officer he preferred to stand. The officer replied that he was blocking pedestrian traffic where he was standing. Mr. Robinson noted that he was twenty-five feet from the building entrance in an area with benches, where people were expected to congregate. He further noted that given his location, he couldn't possible block people from entering or exiting the building. The officer replied simply that he must do as he was told, then asked for his ID in what was plainly an attempt to harass him. A warrant check failed to turn-up any warrants. When the officer confirmed what he already knew about the nonexistence of a warrant, Mr. Robinson told the officer that he had a full-time job, did not sell drugs or engage in any other criminal behavior, and did not appreciate being treated like a criminal.

      2.      This statement by Mr. Robinson seemed to set-off the officers. Though he was not yelling, threatening anyone or otherwise creating a commotion, the officer nonetheless made a call for backup police units. One officer screamed at Mr. Robinson, "When an officer asks you to do something, you do it," while a second officer grabbed his elbow. When Mr. Robinson asked the officer who grabbed him what he was doing, three officers immediately jumped on him and threw him to the ground. Mr. Robinson suddenly found himself face down on the ground, with one officer's knee on his face and a second officer's knee in his back. What began as a pleasant evening talking with friends ended with Mr. Robinson being thrown to the ground, cuffed, arrested and literally dragged to a police car. Why? Because he had the audacity to decline a police officer's request that he sit down while talking with friends in a place where he had every right to be standing, at a time when he was engaged in no illegal conduct whatsoever.

## THE PARTIES

3. Plaintiff MURICE ROBINSON is a citizen of the United States and a resident of Bronx County and the State of New York.

4. Defendant City of New York ("the City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, the City, acting through the New York Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD (and regulations of the NYPD patrol guide), and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

5. At all times relevant hereto, defendants Braulio Aponte and John Doe 1, 2 & 3 were police officers employed by and/or under the supervision of the New York Police Department, acting in their capacity as agents, servants, and employees of the City of New York, and within the scope of their employment as such.

## JURISDICTION AND VENUE

6. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988 and New York state common law.

7. The jurisdiction of the Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction for state law claims.

8. The acts complained of occurred in the Southern District of New York, and venue is lodged in the Court pursuant to 28 U.S.C. § 1391(b).

9. This action has been commenced within one year and three months after the happening of the event upon which the claim is based.

## JURY DEMAND

10. Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

11. On the date of the incident, Plaintiff was a twenty-five year old male principally domiciled at 640 E. 137 Street, Bronx, New York, with his mother, Sharon Threatt, though he also sometimes resided at 1151 E. 229 Street, Bronx, New York, with his girlfriend, Jameria White and his daughter, Savanna Robinson.

12. Plaintiff has been employed at Enterprise Rent-a-Car, located at 619 E. Fordham Rd., Bronx, N.Y., since February 2010.

13. Jameria White is Plaintiff's common law wife, and they have a five-year-old daughter named Savanna Robinson.

14. The charges in the instant case, Docket No. 2011BX020740, were dismissed against Plaintiff on April 11, 2011. *See Exhibit 1, Certificate of Disposition, Murice T. Robinson.*

15.    On the date of the incident, Plaintiff returned from Ms. White's apartment to his mother's building between 3:45pm and 4:15pm. It was Plaintiff's intention to stay the night at his mother's apartment. When he arrived at the building he bumped into a friend, James White, who also happens to be Mr. Robinson's wife's cousin. The two of them stood outside the building talking. They were soon joined by a mutual friend. The three of them were standing approximately fifteen feet to the right of main entrance to the building, next to a railing that separated the garbage cans from the pedestrian area. They were not blocking ingress or egress to the building.

16.    Officer Braulio Aponte and his partner, a dark-skinned male, approximately 5'8" and 170 pounds with no facial hair, walked over to them and asked them to move. Officer Aponte told them that if his supervisor sees them standing where they were standing he would get into trouble. Plaintiff agreed to move and the three of them moved to a nearby area that had three or four benches.

17.    The benches were located approximately thirty to thirty-five feet from the front entrance of the building. Plaintiff was standing immediately next to one of the benches speaking with his two friends. A short while later Officer Aponte and his partner walked over to where Plaintiff was standing. They informed Plaintiff that he was blocking pedestrian traffic and must sit down upon the bench. Mr. Robinson informed the officer that he did not want to sit down. Officer Aponte then informed him that he had to sit down. Plaintiff responded that the law didn't require him to sit down when he was speaking with a friend. Plaintiff observed that he was clearly not blocking pedestrian traffic going to or coming from the building.

18. When Plaintiff told Officer Aponte that he didn't want to sit down, both Officer Aponte and his partner told Plaintiff that when an officer tells you to sit down, you must sit down. Officer Aponte then asked Plaintiff for his identification, and Plaintiff complied by handing Officer Aponte his ID.

19. Approximately twenty or thirty minutes later Officer Aponte returned Plaintiff's ID and informed him that he didn't have an arrest warrant. Plaintiff told Officer Aponte that he knew he didn't have a warrant and there was really no reason to hassle him. At that point Aponte's partner told Plaintiff to pick his hands up so he could search his pockets. Once again Plaintiff complied. Officer Aponte's partner searched Plaintiff's front and rear pants pockets and found no contraband. After he was searched, Plaintiff told Officer Aponte and his partner that if they didn't start to treat people in the community better, they were not going to get any respect from people. Plaintiff further observed that people in downtown Manhattan don't get hassled the same way people in the Bronx get hassled. Although Plaintiff's comments were critical of the officer's behavior, he was not yelling at the officers or cursing them or being otherwise disrespectful.

20. Someone called for backup officers, who began to arrive at the scene. Officer Aponte's partner told Plaintiff to put his hands behind his back. Officer Aponte then grabbed Plaintiff's right elbow and brought it behind his back. Plaintiff asked Aponte why he was being arrested, though he never refused to be handcuffed or pulled away from the officers. A third officer – black male, approximately 5"8" and 160 pounds – then grabbed Plaintiff's left arm. A fourth officer – a white male approximately 6" and

180 pounds – was standing to Plaintiff's left.  The four officers then threw Plaintiff to the ground face first.

21. Officer Aponte's partner placed his shin on Plaintiff's face and was smashing it into the ground while Officer Aponte put his knee in Plaintiff's back.  The white officer was kneeling on Plaintiff's left shoulder blade so that Plaintiff was unable to move his left arm.  The black officer was kneeling on Plaintiff's thighs.

22. The officers kept telling Plaintiff to put his left arm behind his back, but he was unable to comply because one of the officers was holding his left arm down at his side.  Plaintiff tried to explain this to the white officer but the officer either did not hear him or simply refused to listen to him.

23. When the officers threw Plaintiff to the ground a group of civilians immediately surrounded them and began yelling and cursing at the officers.  As this was happening more back-up officers arrived at the scene.

24. At some point the officer who was holding down Plaintiff's left arm release it so that he could be properly handcuffed with both wrists behind his back. Officer Aponte and the black officer then lifted his body up - by the cuffs - and began to drag him toward the police car.  It wasn't until Mr. Robinson screamed, "You're gonna break my arms.  Let me walk," that the officer pulled Mr. Robinson – again by his cuffs – to a standing position, and allowed him to walk the rest of the way to the police car. While he was being dragged by the cuffs, Mr. Robinson experienced intense pain in his wrists and shoulders, and he feared that his shoulders might be dislocated or his arms broken.

25. As a result of his mistreatment by the police, Plaintiff was taken to Lincoln Hospital. The back of Plaintiff's head was swollen and the side of his face was scraped and bruised. He experienced severe pain in his wrists and shoulders.

26. Mr. Robinson was incarcerated for approximately twenty-nine hours.

27. While he was waiting to be arraigned, a correction officer told Plaintiff and the other inmates to move from one cell to another. As they were walking, another correction officer – black male, approximately 5'7", 190 pounds – told Plaintiff to take off his hat. Before Plaintiff could remove his hat, however, the correction officer slapped Plaintiff in the head, knocking the hat off his head.

28. As a result of this incident, Plaintiff had severe pain in his shoulders, wrists, legs and face. The pain began to ebb after two days, and disappeared after approximately four days. He also had a severe headache that didn't dissipate for several days.

29. The criminal charges against Plaintiff were dismissed by Judge Hecht on April 11, 2011.

30. As a result of the brutal arrest inflicted on Plaintiff by members of the New York City Police Department, he suffered significant – and entirely unnecessary – physical and psychological injuries, as well as pain and suffering, fear, emotional distress, mental anguish and humiliation.

31. The arrest of Plaintiff lacked probable cause, and was done maliciously, falsely and in bad faith. Defendants acted in wanton and reckless disregard for his rights and emotional well-being.

32. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered and/or continues to suffer physical, emotional and psychological pain, mental anguish and other losses.

33. The City either knew or should have known that the Individual Defendants were prone to use excessive and illegal force and were likely to engage in such excessive and illegal force.

34. This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

### FIRST CAUSE OF ACTION

42 U.S.C. § 1983

35. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

36. By detaining, arresting and imprisoning Plaintiff without reasonable suspicion or probable cause, assaulting him, searching him, verbally harassing him, maliciously prosecuting him and failing to prevent their fellow officers from engaging in this unconstitutional conduct, Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

37. Defendants acted under pretense and color of state law and in their

individual and official capacities and within the scope of their respective employments as New York City Police and Correction officers. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

38.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION

### Assault and Battery

39.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

40.     Defendants, their agents, servants and employees, acting within the scope of their employment, intentionally, willfully and maliciously assaulted Plaintiff in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did a violent and/or menacing act which threatened such contact to the Plaintiff, and that such act(s) caused apprehension of such contact in the

Plaintiff.

41.     Defendants Braulio Aponte and John Doe 1 - 3 were at all times agents, servants, and employees acting within the scope of their employment by the City of New York, the New York City Police Department and the New York City Department of Corrections, which are therefore responsible for their conduct under the doctrine of respondeat superior.

42.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

43.     Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

### THIRD CAUSE OF ACTION

### False Arrest

47.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

48.     The acts and conduct of the Defendants constitute false arrest and false imprisonment under the laws of the State of New York. Defendants intended to confine Plaintiff and, in fact, confined Plaintiff, and Plaintiff was conscious of the confinement. In addition, Plaintiff did not consent to the confinement and the confinement was not

otherwise privileged.

49. Defendants Aponte and John Doe 1 - 3 were at all times agents, servants, and employees acting within the scope of their employment by New York City, the New York City Police Department and the New York City Department of Corrections, which are therefore responsible for their conduct under the doctrine of respondeat superior.

50. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

51. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## FOURTH CAUSE OF ACTION

### Negligent Hiring, Retention, Training and Supervision

52. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

53. New York City, the New York City Police Department and the New York City Department of Corrections, owed a duty of care to Plaintiff to prevent the physical and mental abuse sustained by Plaintiff. Under the same or similar

circumstances, a reasonable, prudent and careful person would have anticipated that an injury to Plaintiff or to those in a similar situation would probably result from this conduct.

54. Upon information and belief, officer Defendants were unfit and incompetent for their positions as police officers and correction officers.

55. Upon information and belief, the City of New York knew or should have known, through the exercise of reasonable diligence, that Officer Defendants were dangerous.

56. Upon information and belief, the City of New York's negligence in hiring, training, disciplining and retaining Police Officer and Correction Officer Defendants proximately caused Plaintiff's lasting physical, mental, emotional and professional injuries and scars.

57. Upon information and belief, because of the City of New York's negligent hiring, training, discipline and retention of the aforementioned Police and Correction Officers, Plaintiff incurred lasting and significant physical, mental and professional injuries.

58. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## JURY DEMAND

59. Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

That the jury find and the Court adjudge and decree that Plaintiff MURICE ROBINSON shall recover compensatory damages in an amount to be determined at trial against the individual defendants, New York City, the New York City Police Department and the New York City Department of Corrections, jointly and severally, together with interest and costs; and punitive damages in an amount to be determined at trial against the individual defendants, jointly and severally.

    a. That the Plaintiff recover the cost of the suit herein, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

    b. That the Plaintiff have such other and further relief as the Court shall deem just and proper.

Dated: Bronx, New York

June 14, 2012

_____

Steven H. Goldman, Attorney at Law

190 E. 161 Street

Bronx, N.Y. 10451

Attorney for Murice Robinson